# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2989
_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Ferris Lavelle Lee, | * |
| also known as Vito, | * |
| | * |
| Appellant. | * |

_____

No. 10-2990
_____

Appeals from the United States
District Court for the
District of North Dakota.

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Maurice M. Forest, | * |
| | * |
| Appellant. | * |

_____

No. 10-2992
_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Marcus Jermaine Royston, | * |
| also known as BD, | * |
| | * |
| Appellant. | * |

_____

Submitted: January 10, 2012
Filed: August 2, 2012

_____

Before RILEY, Chief Judge, SHEPHERD, Circuit Judge, and WEBBER,[1] District Judge.

_____

RILEY, Chief Judge.

A jury convicted Ferris Lavelle Lee, Maurice M. Forest, and Marcus Jermaine Royston (collectively, appellants) of various drug-related offenses. The district court sentenced Lee to 540 months imprisonment, Forest to a statutory mandatory minimum 120 months imprisonment, and Royston to a statutory mandatory minimum life sentence. On appeal, the appellants raise numerous challenges to their convictions,

---

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

-2-

and Forest and Royston challenge their sentences. We affirm in part and reverse in part, vacating Forest's and Royston's sentences and remanding for resentencing.

I.  BACKGROUND

   A.  Facts[2]

Lee, along with Jake Northern, oversaw a conspiracy to distribute cocaine and cocaine base[3] in North Dakota and South Dakota. Lee and Northern repeatedly purchased cocaine from two Minnesota sources, one being Royston, and directed the sale of the drugs in Sioux Falls, South Dakota, and Bismarck and Fargo, North Dakota. Royston eventually moved to Fargo, where he sold cocaine for the organization. Forest operated in Bismarck, where he provided security, collected money, and sold cocaine for the organization.

In December 2008, Tara Bauer, who helped the organization sell cocaine in Bismarck, informed local authorities about the organization. Bauer acted further as a confidential informant and participated in controlled buys on behalf of the authorities. Other confidential informants made numerous controlled buys from the organization in both Bismarck and Fargo. Each appellant was present and involved in at least one controlled buy.

   B.  Procedural History

In December 2009, a grand jury indicted the appellants and five other alleged co-conspirators in a fourteen-count indictment. Count One charged appellants with conspiring to possess with intent to distribute and distributing more than fifty grams

---

[2]We present the facts in the light most favorable to the jury verdict. See United States v. Meeks, 639 F.3d 522, 525 (8th Cir. 2011).

[3]The government produced evidence the organization sold both cocaine and cocaine base. Except where the legal distinction is relevant, we generally refer to the drugs sold as cocaine.

-3-

of cocaine base, and more than 500 grams of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 18 U.S.C. § 2.  Counts Two through Twelve charged Lee with distributing, or aiding and abetting the distribution of a controlled substance—either cocaine base or a mixture or substance containing cocaine—in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  The indictment charged Forest (Count Eleven) and Royston (Count Twelve) with one count each of distributing and aiding and abetting the distribution of a controlled substance.[4]  Count Thirteen charged Lee with employing or using a minor in a drug operation, in violation of 21 U.S.C. § 861(a)(1), (c), and (d), and 18 U.S.C. § 2.  Count Fourteen charged Lee with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a) and (c).

In May 2010, the district court presided over a thirteen-day trial.  The government presented testimony from law enforcement officers, drug analysts, co-conspirators, confidential informants and individuals who either sold drugs for or bought drugs from the organization.

The jury returned a verdict finding all of the appellants guilty of the conspiracy[5] and distribution charges.[6]  As to the conspiracy, the jury found (1) Lee's participation involved more than fifty grams of a mixture and substance containing cocaine base

---

[4]The indictment also charged Forest in Count Ten, but this charge against him was dropped.

[5]The jury found the appellants guilty both of conspiring to distribute controlled substances and aiding and abetting the conspiracy.

[6]On Counts Two, Three, Four, Six and Seven, the jury convicted Lee only for aiding and abetting the distribution of a controlled substance. On Counts Five, Eight, Nine, Ten, Eleven and Twelve, the jury convicted Lee for both distribution of a controlled substance and aiding and abetting the distribution of a controlled substance.  The convictions of Forest and Royston were both for distribution and aiding and abetting the distribution of controlled substances.

and more than 500 grams of a mixture and substance containing cocaine; (2) Royston's participation in the conspiracy involved more than fifty grams of a mixture and substance containing cocaine base; and (3) Forest aided and abetted a conspiracy to distribute more than fifty grams of a mixture and substance containing cocaine base. The jury also found Lee guilty of engaging in a continuing criminal enterprise, but not guilty of employing or using a minor to distribute a controlled substance.

On August 3, 2010, the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (FSA), became effective. As relevant here, the FSA amended 21 U.S.C. § 841(b)(1)(A)(iii) to increase from fifty to 280 grams the quantity of mixture containing cocaine base necessary to trigger statutory minimum and maximum sentences.

After denying the appellants' post-conviction motions, see Fed. R. Crim. P. 29 and 33, the district court entered judgment on August 31, 2010. Determining the FSA was not retroactive and thus inapplicable, the district court sentenced (1) Lee to 540 months imprisonment for his continuing criminal enterprise conviction, to run concurrently with lesser sentences for his distribution convictions;[7] (2) Forest to a statutory mandatory minimum sentence of 120 months for conspiracy, to run concurrently with a lesser sentence for distribution; and (3) Royston to a mandatory minimum sentence of life imprisonment for conspiracy, because he was a career offender who had previously been convicted of two felony charges, and the jury determined the quantity of cocaine base involved in this conviction was more than fifty grams. The appellants filed timely notices of appeal.

---

[7]The district court vacated Lee's conspiracy conviction after determining the conviction was a lesser-included-offense of his continuing criminal enterprise conviction, and only one punishment was allowed for these two counts of conviction. See Rutledge v. United States, 517 U.S. 292, 307 (1996).

-5-

## II. DISCUSSION

All of the appellants challenge the sufficiency of the evidence supporting their convictions. Royston also protests certain evidentiary rulings, the district court's denial of Royston's motion for a new trial, and the district court's imposition of a mandatory life sentence. Forest objects to the imposition of a mandatory minimum 120 month sentence. Lee expressly does not challenge his sentence.

### A. Sufficiency of the Evidence

We review de novo sufficiency of the evidence challenges, "viewing the evidence most favorably to the jury verdict, resolving conflicts in favor of the verdict, and giving it the benefit of all reasonable inferences." United States v. Spencer, 592 F.3d 866, 876 (8th Cir. 2010). "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to find [the appellants] guilty beyond a reasonable doubt." Id. (quoting United States v. Moore, 108 F.3d 878, 881 (8th Cir. 1997)) (internal quotation marks omitted). "In making such an evaluation, 'it is axiomatic that we do not review questions involving the credibility of witnesses, but leave credibility questions to the jury.'" United States v. Ragland, 555 F.3d 706, 715 (8th Cir. 2009) (quoting United States v. Dabney, 367 F.3d 1040, 1043 (8th Cir. 2004)) (internal marks omitted).

### 1. Continuing Criminal Enterprise

First, we consider Lee's conviction for engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(c) (Count Thirteen).[8] To uphold the conviction, there must be sufficient evidence Lee committed

---

[8] We construe Lee's appeal of his conspiracy conviction, which the district court already vacated, as a challenge to the evidence supporting his continuing criminal enterprise conviction, of which the conspiracy charge was determined to be a lesser included offense. See Rutledge, 517 U.S. at 307.

> 1) a felony violation of the federal narcotics laws;
> 2) as part of a continuing series of three or more related felony violations of federal narcotics laws;
> 3) in concert with five or more other persons;
> 4) for whom [Lee] is an organizer, manager or supervisor; [and]
> 5) from which [Lee] derives substantial income or resources.

United States v. Jackson, 345 F.3d 638, 645 (8th Cir. 2003) (quoting United States v. Jelinek, 57 F.3d 655, 657 (8th Cir. 1995)) (internal marks omitted).

Lee maintains "[n]o rational trier of fact can find beyond a reasonable doubt that [he] committed the series of related violations of narcotics laws as alleged . . . , that he was an organizer, manager or supervisor of [five] or more persons in an organization, or that he obtained substantial income from the enterprise." We disagree.

The jury convicted Lee of ten counts of distributing cocaine, sufficiently satisfying the first two elements, which require "a continuing series of three or more related felony violations of federal narcotics laws." Id. Lee's attempt to characterize the offenses merely as "a number of street level cocaine base dealers acting individually for their own benefit" falls flat. Northern described in detail his and Lee's efforts to purchase and distribute cocaine in three cities, using various individuals—often friends from their hometown of Chicago—as dealers.

Numerous witnesses corroborated Northern's core testimony, including confidential informants who distributed and purchased cocaine Lee supplied. It was the jury's prerogative to believe those witnesses, even if they were, as Lee complains, "admitted liars, drug users, drug dealers, and thieves" "who had struck deals with the Government." See United States v. Hernandez, 569 F.3d 893, 896 (8th Cir. 2009) ("To reach a verdict, a jury is often required to weigh the credibility of criminal witnesses."); United States v. Bradley, 643 F.3d 1121, 1125-26 (8th Cir. 2011)

(affirming a conviction and explaining our past rejection of claims that witnesses "were incredible because of their incentive for reduced sentences").

Sufficient evidence also supports the jury's finding that Lee organized, supervised, or managed more than five people—the jury identified eleven persons Lee managed—in furtherance of the continuing criminal enterprise, meeting the third and fourth elements. "[The management] element of the [continuing criminal enterprise] statute is satisfied if '[Lee] exerted some type of influence over another individual as exemplified by that individual's compliance with [Lee's] directions, instructions, or terms.'" Jackson, 345 F.3d at 646 (quoting United States v. Possick, 849 F.2d 332, 336 (8th Cir. 1988)) (internal quotation marks omitted). "The government need not establish that [Lee] managed five people at once, that the five acted in concert with each other, that [Lee] exercised the same kind of control over each of the five, or even that [Lee] had personal contact with each of the five." Possick, 849 F.2d at 335-36.

The jury heard evidence that at least five people sold cocaine at the direction of Lee and Northern. See id. at 336 (explaining "defendants who arrange the acquisition of the drug, its delivery, and set the price and credit terms have been found . . . to satisfy the requirements of the management element"); United States v. Mathison, 518 F.3d 935, 940 (8th Cir. 2008) (reasoning the element is met if there is evidence showing the "defendant . . . provided substantial amounts of drugs in an ongoing relationship with lower-level drug dealers"). Lee also arranged for some of these dealers to live and deal drugs out of two homes, paying the homeowners cash and drugs to do so. This evidence supported the jury's finding that Lee directed the two owners of these homes. See id. (recognizing "a defendant manages someone who stores drugs for him"); United States v. Lueth, 807 F.2d 719, 732 (8th Cir. 1986) (similar).

Finally, there was sufficient evidence for the jury to conclude Lee derived substantial income from the enterprise. "The [continuing criminal enterprise] statute

-8-

does not prescribe the minimum amount of money required to constitute 'substantial' income. Judicial decisions construing this phrase have given the prosecution great latitude on this point." United States v. Jones, 801 F.2d 304, 310 (8th Cir. 1986). We reject Lee's contention the evidence shows he failed to obtain substantial income because the "[d]eliveries of crack cocaine involving [him] . . . produced relatively small amounts of money, . . . . the wire transfers . . . were not substantial," and Bauer said "Lee was always broke." Lee's selective and self-serving account of the facts mischaracterizes the record evidence, which showed Lee and Northern oversaw the distribution of large quantities of cocaine, resulting in significant amounts of money changing hands. At least two witnesses testified to spending substantial sums of money on Lee's drugs, including one drug user who claimed he spent at least $20,000 on cocaine from Lee. A reasonable jury could conclude Lee obtained substantial income as a result of the large-scale criminal enterprise. See id. (recognizing three non-exclusive factors to consider are "1) evidence of the defendant's position in the drug network; 2) the quantity of narcotics involved; and 3) the amount of money that changed hands"); see also United States v. Roman, 870 F.2d 65, 75 (2d Cir. 1989) ("Moneys received by the defendant's underlings may be considered constructively received by the defendant, and the jury is entitled to consider the gross amount received, notwithstanding the defendant's argument that some portion of his gross income must be paid out to others.").

### 2. Distribution

To convict the appellants for distribution, the government needed to prove the appellants "knowingly sold or otherwise transferred" specified amounts of cocaine. United States v. Garcia, 646 F.3d 1061, 1066 (8th Cir. 2011). The aiding and abetting charges required the government to prove the appellants "associated [themselves] with the unlawful [sale or transfer], participated in it as something [they] wished to bring about, and sought by [their] actions to make it succeed." United States v. Lewis, 593 F.3d 765, 769 (8th Cir. 2010). "[N]either possession nor an actual sale by a defendant need be proved by the government on a charge of distributing or aiding and abetting

the distribution of drugs." United States v. Hernandez, 986 F.2d 234, 238 (8th Cir. 1993).

As for Lee, five of his ten challenged counts of conviction were for distributing cocaine and aiding and abetting the same, while five were solely for aiding and abetting.[9] Each of the counts Lee challenges involved controlled buys of cocaine. The five distribution counts are, at a minimum, supported by the buyers' testimony that Lee was physically present and participated in the sale. While Lee was not present during the five controlled buys forming the basis of his aiding and abetting counts, there was ample testimony from the buyers and other witnesses that Lee, along with Northern, supplied the cocaine and helped facilitate the transactions in various ways. Once again Lee attacks the credibility of these witnesses, but fails to convince us their testimony was so incredible as to justify invading the jury's purview. See, e.g., Bradley, 643 F.3d at 1125-26. We affirm Lee's convictions.

For similar reasons, we affirm Forest's and Royston's distribution convictions. In both instances, there was evidence allowing the jury to believe Forest and Royston participated in separate controlled buys of cocaine. The two confidential informants who made the controlled buys at issue testified Forest and Royston actively participated during the respective transactions. This is enough to uphold the convictions. See, e.g., United States v. Williams, 340 F.3d 563, 570-71 (8th Cir. 2003).

### 3. Conspiracy

To uphold Forest's and Royston's conspiracy convictions, there must be evidence from which a reasonable jury could conclude (1) "a conspiracy, i.e., an agreement to distribute" cocaine, existed; (2) Forest and Royston "knew of the

---

[9]Lee does not challenge his distribution conviction under Count Five. It is not entirely clear whether Lee challenges his conviction under Count Ten.

conspiracy"; and (3) they "intentionally joined the conspiracy." United States v. Slagg, 651 F.3d 832, 840 (8th Cir. 2011). "A formal agreement is not required to create a conspiracy, and the existence of a conspiracy can be proved by direct or circumstantial evidence." United States v. Bowie, 618 F.3d 802, 812 (8th Cir. 2010) (quoting United States v. Williams, 534 F.3d 980, 985 (8th Cir. 2008)) (internal quotation marks omitted). "[A] single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." Slagg, 651 F.3d at 840 (quoting United States v. Longs, 613 F.3d 1174, 1176 (8th Cir. 2010)) (internal quotation marks omitted).

Both Forest and Royston argue there was insufficient evidence for the jury to conclude they voluntarily joined the conspiracy. Forest acknowledges there was evidence showing he knew other participants in the conspiracy and he independently sold drugs, but Forest asserts this is not enough to link him to the conspiracy. Similarly, Royston claims the "evidence did little more than prove [he] associated with individuals who were involved with the conspiracy." Forest and Royston understate the evidence.

Northern testified he brought Forest to Bismarck to provide security after one of the organization's dealers was robbed. According to Northern, Forest collected drug money for the organization and distributed cocaine. A confidential informant, Galen Smith, testified he first saw Forest during a confrontation with Lee about a drug deal, and later bought cocaine from Forest, who was selling on Lee's behalf. Rashad Jackson, who admitted selling cocaine for the organization, said he set up Forest with drug customers. Other witnesses said they either bought cocaine from Forest or observed him selling cocaine.

Northern testified Royston's involvement began when Royston sold relatively large quantities of cocaine to Northern and Lee on at least two occasions, with Lee and

Northern paying approximately $5,600 each time. According to Northern, Royston later came from Minnesota to Fargo and distributed cocaine with Lee. Royston also helped Northern and Lee "cook up drugs . . . in Bismarck." Other witnesses corroborated some of Northern's testimony, explaining they met Royston through Lee, and purchased cocaine from Royston.

From this evidence, it was reasonable for the jury to conclude both Forest and Royston knowingly and intentionally joined the conspiracy to distribute cocaine.

### B.     Admission of Past Crime

During the trial, the government presented evidence Royston was convicted in 1999 for possession of a controlled substance with intent to deliver in violation of Illinois law. Royston argues the district court abused its discretion by admitting the evidence because it "did nothing more than establish [his] propensity to commit a drug offense, which is exactly what [Fed. R. Evid.] 404(b) [is] intended to prohibit."

Because Royston objected at trial, we review the admission for abuse of discretion. See United States v. Gaddy, 532 F.3d 783, 789 (8th Cir. 2008). Here, the district court determined Royston's conviction was admissible because it was probative of his intent to join the conspiracy and was not so remote in time so as to be inadmissible. We detect no abuse of discretion in this decision. "We have held on numerous occasions that a prior conviction for distributing drugs, and even the possession of user-quantities of a controlled substance, are relevant under Rule 404(b) to show knowledge and intent to commit a current charge of conspiracy to distribute drugs." United States v. Adams, 401 F.3d 886, 894 (8th Cir. 2005) (quoting United States v. Frazier, 280 F.3d 835, 847 (8th Cir. 2002)) (internal quotation marks omitted). "[T]he district court's limiting instruction, which instructed the jury that it could only consider this evidence to decide the issues of intent and knowledge," addressed "any unfair prejudicial effect of these prior convictions." Gaddy, 532 F.3d at 790.

### C. Motion for a New Trial

We next consider the district court's denial of Royston's motion for a new trial, which we also review for abuse of discretion. See United States v. Sturdivant, 513 F.3d 795, 802 (8th Cir. 2008). A district court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). It is proper for the court to weigh the evidence and consider witness credibility when doing so, but such authority should be used cautiously and sparingly. See Sturdivant, 513 F.3d at 802. "The jury's verdict must be allowed to stand unless 'the evidence weighs heavily enough against the verdict such that a miscarriage of justice may have occurred.'" Id. (quoting United States v. Johnson, 474 F.3d 1044, 1051 (8th Cir. 2007)) (internal marks omitted). Royston argues he is entitled to a new trial because (1) Northern's testimony was incredible, and (2) the jury saw two transcripts that improperly identified him while the jury was listening to audio recordings of two controlled buys.

#### 1. Witness Credibility

The district court determined the "interest of justice" did not require a new trial, because "there was sufficient evidence to justify the convictions on both counts." The district court highlighted testimony from four witnesses, including Northern, showing Royston participated with Lee in the conspiracy. The district court concluded "no miscarriage of justice occurred," explaining "Royston thoroughly cross-examined all witnesses at trial and the . . . relevant witnesses' testimony was sufficiently credible." After reviewing the evidence, we reach the same conclusion.

We reject Royston's contention that comments the district court made about Northern's credibility during Royston's sentencing hearing show Royston is entitled to a new trial. Responding to comments Royston made challenging the evidence, the district court stated, "I understand what you're saying . . . and I appreciate the argument that, look, you know, whatever Jake Northern said it's had [sic] to believe that anyone could have given it much weight, and [the jury] obviously didn't give it

-13-

much weight in some instances and they apparently gave it more weight in other instances. And it doesn't make sense and I appreciate that argument." Viewed in context, the district court's comments appear to be merely an attempt to explain to Royston that the district court understood Royston's credibility argument. The district court's comments are entirely consistent with the rationale the district court articulated when denying Royston's motion for a new trial.

### 2. Transcripts

We next consider Royston's claim that a new trial is necessary because the district court improperly allowed the inclusion of his name and initials on two transcripts displayed to the jury while the government played audio recordings of two controlled buys. Royston argues he "was entitled to have the jury consider Brown's testimony alone to determine if [Royston] was present." Although it appears from the undeveloped record on this issue that the use of these transcripts was not entirely proper, no reversible error occurred.

Both challenged transcripts—Court Exhibits E and G[10]—detail conversations between Lee and a confidential informant (identified elsewhere as Herb Brown) during the two controlled buys. At the top of Exhibit E, Royston's name is listed next to the initials "MR," but Royston is not identified as speaking during the conversation. Exhibit G does not list Royston's name, but does indicate "MR" asked Brown, "You don't want to take that one with you?" Brown testified Royston was with Lee during both controlled buys at issue, but police officer Brad Stuvland was unable to identify Royston as being present during the controlled buys.

---

[10] The government incorrectly states the transcript of the second controlled buy was Exhibit F, which was a recorded phone call between Lee and the confidential informant Herb Brown.

-14-

The government concedes it was a mistake to include Royston's name and initials on Exhibit E. Including Royston's name and initials risked improperly suggesting to the jury that Royston was present during the first controlled buy, which the accompanying recording did not demonstrate. And the inclusion of Royston's initials on Exhibit G may have been improper because Officer Stuvland, who helped prepare the transcript, did not state he was familiar with Royston's voice nor did he positively identify the voice on the recording as Royston, although "MR" was listed on the transcript.

Royston did not raise this issue in his motion for a new trial, nor did he object to use of the transcripts with any specificity.[11]  "We have repeatedly held that objections must be specific and that otherwise we will review evidentiary rulings only for plain error." United States v. Johnson, 450 F.3d 366, 371 n.2 (8th Cir. 2006) (quoting United States v. Carter, 410 F.3d 1017, 1023 (8th Cir. 2005)) (internal quotation marks omitted); see also Fed. R. Crim. P. 51(b); Fed. R. Evid. 103(a)(1)(B).

We conclude any error made by the district court was harmless and thus not reversible even under our typical abuse of discretion standard. See United States v.

---

[11]Before the first recording was played, Officer Stuvland said the transcript (Exhibit E) was "an accurate reflection of the conversation [of] the controlled buy. Lee's attorney objected, arguing inadequate foundation because "this officer isn't able to identify . . . Lee as being present" during the controlled buy. After the officer testified he was familiar with Lee's voice and could positively identify Lee's voice on the exhibit, Lee's attorney renewed his objection, which the district court overruled. At the district court's prompting, Royston's and Forest's attorneys joined the objection without elaborating. Before the second recording was played to the jury, the appellants made the "[s]ame objection" on the "[s]ame basis." Royston's attorney added, "I'd note in . . . [Exhibit E, the government] had a name on there on the very beginning of it and then there was no audio of [Royston] on there. If they try to do that again I would have further objection." Exhibit G indicated Royston spoke during the recording of the second controlled buy.

-15-

Peneaux, 432 F.3d 882, 894 (8th Cir. 2005) ("We will not reverse a conviction . . . if an evidentiary error is harmless.").

> An evidentiary error is harmless if the substantial rights of the defendant were unaffected and the error did not influence or had only a slight influence on the verdict. To determine whether the error was harmless we review the entire record to determine whether the substantial rights of the defendant were prejudiced by the admission.

Id. at 894-95 (citations omitted).

Here, Brown testified Royston was present during both of the controlled buys. Royston made the jury aware the only direct evidence showing Royston's involvement in these controlled buys was Brown's testimony, which Royston vigorously challenged during cross-examination and closing arguments. "Finally, the transcripts were used only to assist the jurors as they listened to the recordings," and the district court adequately instructed the jurors twice "that the [audio recordings] were the best evidence, that the transcripts were merely an aid and that any discrepancies were to be resolved in favor of what was heard." United States v. Bentley, 706 F.2d 1498, 1508 (8th Cir. 1983). We conclude no miscarriage of justice occurred as the result of the use of the transcripts, and thus affirm the district court's denial of a new trial.

### D. Fair Sentencing Act

The district court sentenced Forest and Royston on August 31, 2010, soon after the August 3 enactment of the FSA which, as relevant here, increased the quantities of crack cocaine needed to trigger statutory minimum sentences. The district court determined the FSA was not applicable, and therefore the district court was required to impose statutory mandatory sentences upon Forest and Royston because of the amount of cocaine base, or crack, the jury found their crimes involved. Forest and Royston argue the district court erred because the revised statutory penalties should have applied to their sentences, and ask us to remand their cases to the district court

for resentencing pursuant to the FSA.[12]  We adhere to Dorsey v. United States, 567 U.S. ___, ___, 132 S. Ct. 2321, 2326 (2012), in which the Supreme Court held "the new, more lenient mandatory minimum provisions" of the FSA "apply to offenders who committed a crack cocaine crime before August 3, 2010, but were not sentenced until after August 3."

We thus vacate Royston's and Forest's sentences and remand for proceedings consistent with Dorsey and the FSA.  The drug quantity range found by the jury no longer requires imposition of the same statutory mandatory sentences.  The district court, upon resentencing, must address the FSA and the drug quantities involved in these cases, and our holding does not mean either Forest or Royston is entitled to a lesser, or any particular, sentence under the statutes or the advisory guidelines.[13]

## III.  CONCLUSION

We affirm the district court's judgment and sentence as to Lee.  As to Forest and Royston, we affirm their convictions, but vacate their sentences and remand for resentencing consistent with this opinion.

_____

---

[12]Royston did not raise the retroactivity of the FSA in his opening brief.  On July 5, 2012, Royston filed a pro se supplemental brief raising this issue.  We exercise our discretion to consider this untimely issue.  See, e.g., United States v. Brewer, 624 F.3d 900, 909 n.7 (8th Cir. 2010).

[13]In his opening brief, Royston challenged the district court's imposition of a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A), arguing the statutory minimum should only apply to those convicted of distributing "crack," not "cocaine base."  Royston acknowledged in his reply brief that this argument is foreclosed by the Supreme Court's holding in DePierre v. United States, 564 U.S. ___,___, 131 S. Ct. 2225, 2237 (2011), which determined the "term 'cocaine base' as used in § 841(b)(1) means not just 'crack cocaine,' but cocaine in its chemically basic form."